1   QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Randa A.F. Osman (Bar No. 150798)
2   randaosman@quinnemanuel.com
    865 South Figueroa Street, Floor 10
3   Los Angeles, California 90017-2543
    Telephone:   (213) 443-3000
4   Facsimile:   (213) 443-3100

5   QUINN EMANUEL URQUHART & SULLIVAN, LLP
    Lucas V.M. Bento (*pro hac vice forthcoming*)
6   lucasbento@quinnemanuel.com
    Jingtian Chen (*pro hav vice forthcoming*)
7   jingtianchen@quinnemanuel.com
    51 Madison Avenue, Floor 22
8   New York, NY 10010
    Telephone:   (212) 849-7000
9   Facsimile:   (212) 849-7100

10  *Attorneys for Petitioner*
    *Shervin Pishevar*

11              **UNITED STATES DISTRICT COURT**

12              **CENTRAL DISTRICT OF CALIFORNIA**

13

14

15  | IN RE APPLICATION OF | Misc. Action No. _____ |
16  | SHERVIN PISHEVAR FOR AN |
    | ORDER TO TAKE DISCOVERY | **MEMORANDUM OF POINTS** |
    | FOR USE IN FOREIGN | **AND AUTHORITIES IN SUPPORT** |
17  | PROCEEDINGS PURSUANT TO 28 | **OF PETITIONER'S *EX PARTE*** |
    | U.S.C. § 1782, | **APPLICATION AND PETITION** |
18  | | **FOR AN ORDER TO CONDUCT** |
    |          *Petitioner*. | **DISCOVERY FOR USE IN** |
19  | | **FOREIGN PROCEEDINGS** |
    | | **PURSUANT TO 28 U.S.C. § 1782** |
20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT .................................................................. 1

I.  FACTUAL BACKGROUND .................................................................. 2

    A.  The Parties........................................................................................ 2

    B.  Petitioner's Encounter With British Police.................................... 3

    C.  U.S.-Based Reporter (Mr. Marcus Baram) Obtains Forged Police Report ........................................................................... 4

    D.  Mr. Baram Makes Enquiries About The Arrest And The Forged Police Report ........................................................................... 5

    E.  Mr. Baram's Publication Of Article Disseminating Forged Police Report ........................................................................... 7

    F.  Petitioner Uncovers, And British Police Confirm, That Report Is Fake ................................................................................. 8

    G.  Petitioner's Contemplated Proceedings ..................................... 10

    H.  The New York Section 1782 Applications ................................. 12

    I.  Respondent Possesses Highly Material Information Concerning The Forged Report Distributors .................................... 15

II.  ARGUMENT .................................................................................... 15

    A.  Legal Framework ........................................................................ 15

    A.  Petitioner Satisfies The Statutory Requirements Of 28 U.S.C. § 1782........................................................................................ 17

        1.  Respondent Is "Found" In The Central District of California. ................................................................. 18

        2.  The Discovery Sought Is For Use In Foreign Proceedings. ...... 18

        3.  Petitioner Is An "Interested Person." ...................................... 20

    B.  All Of The Discretionary Factors Of Section 1782 Weigh In Favor of Permitting The Discovery Petitioner Seeks. ....................... 21

        1.  The First *Intel* Factor Favors Granting Discovery. ................. 21

        2.  The Second *Intel* Factor Favors Granting Discovery. ............. 22

        3.  The Third *Intel* Factor Favors Granting Discovery. ............... 23

        4.  The Fourth *Intel* Factor Favors Granting Discovery. .............. 24

III.  CONCLUSION .............................................................................. 25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Advanced Micro Devices, Inc. v. Intel Corp.*,
   292 F.3d 664 (9th Cir. 2002) ......................................................................... 17, 23

*Ex Parte ANZ Commodity Trading Pty Ltd.*,
   2017 WL 3334878 (N.D. Cal. Aug. 4, 2017) ........................................................ 21

*In re Application for an Order Permitting Metallgesellschaft AG to take
   Discovery*,
   121 F.3d 77 (2d Cir. 1997) .................................................................................... 24

*In re Application of Shervin Pishevar*,
   439 F. Supp. 3d 290 (S.D.N.Y. 2020) ................................................... 18, 23, 24

*In re Bayer AG*,
   146 F.3d 188 (3d Cir. 1998) .................................................................................. 25

*BLK Enterprises, LLC v. Unix Packaging, Inc.*,
   2018 WL 5993841 (C.D. Cal. Sept. 26, 2018) ..................................................... 25

*Brandi-Dohrn v. IKB Deutsche Industriebank AG*,
   673 F.3d 76 (2d Cir. 2012) ........................................................................... 17, 23

*Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*,
   613 F. App'x 319 (5th Cir. 2015) ......................................................................... 19

*In re C.R. Bard, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*,
   287 F.R.D. 377 (S.D. W.Va. 2012) ....................................................................... 25

*In re Catalyst Managerial Servs., DMCC*,
   680 F. App'x 37 (2d Cir. 2017) ............................................................................ 19

*In re Cathode Ray Tube (CRT) Antitrust Litig.*,
   2013 WL 183944 (N.D. Cal. Jan. 17, 2013) ......................................................... 23

*Euromepa S.A. v. R. Esmerian, Inc.*,
   51 F.3d 1095 (2d Cir. 1995) ......................................................................... 22, 24

*In re Ex Parte Application of Glob. Energy Horizons Corp.*,
   2015 WL 1325758 (N.D. Cal. Mar. 24, 2015) ..................................................... 19

*In re Ex Parte Application of Jommi*,
   2013 WL 6058201 (N.D. Cal. Nov. 15, 2013) ............................................... 20, 21

*In re Furstenberg Fin. SAS*,
   2018 WL 3392882 (S.D.N.Y. July 12, 2018) ....................................................... 19

*In re Golden Root Invs. PTE Ltd.*,
   2019 WL 8011743 (C.D. Cal. Sept. 6, 2019) ....................................................... 17

-ii-

*In re Hornbeam Corp.*,
    722 F. App'x 7 (2d Cir. 2018).............................................................19

*In re: Application of Bracha Found.*,
    663 F. App'x 755 (11th Cir. 2016)......................................................19

*Intel Corp v. Advanced Micro Devices, Inc.*,
    542 U.S. 241 (2004)...................................................................*passim*

*Inv. Vehicles v. KPMG, L.L.P.*,
    798 F.3d 113 (2d Cir. 2015)................................................................21

*IPCom GMBH & Co. KG v. Apple Inc.*,
    61 F. Supp. 3d 919 (N.D. Cal. 2014)..................................................20

*In re Letter of Request from Crown Prosecution Serv. of U.K.*,
    870 F.2d 686 (D.C.Cir.1989)..............................................................19

*In Re Letters Rogatory From Tokyo Dist., Toyko, Japan*,
    539 F.2d 1216 (9th Cir. 1976)............................................................16

*Minatec Fin. S.A.R.L. v. SI Group Inc.*,
    2008 WL 3884374 (N.D.N.Y. Aug. 18, 2008)...................................25

*Palantir Techs., Inc. v. Abramowitz*,
    415 F. Supp. 3d 907 (N.D. Cal. 2019).................................................22

*In re Palantir Techs., Inc.*,
    2020 WL 3988000 (9th Cir. June 22, 2020)........................................22

*In re Pioneer Corp. for an Order Permitting Issuance of Subpoenas to Take
    Discovery in a Foreign Proceeding*,
    2018 WL 2146412 (C.D. Cal. May 9, 2018)........................................18

*In re Pioneer Corp.*,
    2018 WL 4963126 (C.D. Cal. Aug. 27, 2018) ....................................20

*In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*,
    634 F.3d 557 (9th Cir. 2011) ..............................................................17

*Saini v. Int'l Game Tech.*,
    434 F. Supp. 2d 913 (D. Nev. 2006) ...................................................25

*Siemens AG v. W. Digital Corp.*,
    2013 WL 5947973 (C.D. Cal. Nov. 4, 2013) ................................17, 22

*In re Societe d'Etude de Realisation et d'Exploitation pour le Traitement du
    Mais*,
    2013 WL 12440994 (N.D. Cal. Nov. 21, 2013)..................................20

*Ubiquiti Networks, Inc. v. Kozumi USA Corp.*,
    295 F.R.D. 517 (N.D. Fla. 2013).........................................................25

*In re Ex Parte Application of SERETM*,

-iii-

2013 WL 12440994 (N.D. Cal. Nov. 21, 2013) .................................................... 21

**Rules and Statues**

28 U.S.C. § 1782 ........................................................................................... *passim*

28 U.S.C. § 1782(a) ................................................................................... 16, 20

*EX PARTE* APPLICATION AND MEMORANDUM OF POINTS AND AUTHORITIES

Shervin Pishevar ("Petitioner"), respectfully submits this Memorandum of Points and Authorities in support of his Application and Petition pursuant to 28 U.S.C. § 1782 ("Section 1782"), for an order authorizing him to obtain limited discovery from Sam Anson ("Mr. Anson" or the "Respondent"), in the form of the attached subpoenas *duces tecum* and *ad testificandum* (the "Subpoenas") (the "Application").[1]

## PRELIMINARY STATEMENT

Petitioner is the victim of an international conspiracy which sought to destroy his reputation and character.  This Application arises from the forgery of a British police report ("Forged Police Report") that was supplied by someone in the United Kingdom ("UK Source") to an individual in Washington, D.C. ("D.C. Source"), who in turn gave it to a journalist—Mr. Marcus Baram—who used the forged report in an article published by Fast Company, a leading technology news magazine ("Baram Article").[2]  The article, which played a key role in disseminating false information, caused Petitioner to suffer irreparable harm to his reputation and standing.  The Respondent has identifying information about the D.C. Source (the "Identifying Information") but cannot disclose that information absent a subpoena.  The Respondent therefore has possession, custody, or control of the Identifying Information sufficient to likely identify the D.C. Source, who in turn would be able to identify the UK Source and anyone else involved in the creation or malicious dissemination of the Forged Police Report and other false information about the Petitioner ("Forgers").  Petitioner brings this Application to obtain that information for use in contemplated civil and criminal proceedings in England against the Forgers ("Contemplated English Proceedings").

---

[1]  The Subpoenas are attached as Exhibit 2 to the Declaration of Lucas Bento, dated February 23, 2021 ("Bento Decl.").

[2]  Declaration of Charlotte Watson, dated February 19, 2021 ("Watson Decl.") ¶ 21 & Ex.  5.

-1-

In seeking to uncover the identity of the D.C. Source, the Petitioner also filed in the U.S. District Court for the Southern District of New York ("SDNY") two Section 1782 actions against Fast Company and Mr. Baram to obtain the name of the D.C. Source ("SDNY 1782 Actions").  Mr. Baram, however, sought to shield the identity of the D.C. Source by relying on the reporter's privilege.  After Petitioner exhausted additional potential sources of that information, the SDNY court ultimately held that Petitioner successfully overcame the reporters' privilege by making, *inter alia*, a clear and convincing showing that the identity of the D.C. Source was not obtainable from other sources and, accordingly, ordered Mr. Baram to disclose the identity of the D.C. Source.  However, having now received new information that the Respondent has Identifying Information that could likely identify the D.C. Source, Petitioner seeks to exhaust the Respondent as an alternative source.

This Application meets all of the requirements of Section 1782.  The Respondent resides or is found in this district.  The discovery sought by the Petitioner is relevant to the issues at stake in the Contemplated English Proceedings.  Moreover, each of the discretionary factors laid down in the Supreme Court's *Intel* decision favor the discovery sought by Petitioner.  Accordingly, Petitioner respectfully requests that the Court grant his Application and permit him to serve the Subpoenas on the Respondent.

# I.   FACTUAL BACKGROUND

## A.   The Parties

***Shervin Pishevar.***  Shervin Pishevar is a venture capital investor, entrepreneur and philanthropist.[3]  He is the co-founder of Sherpa Capital, a leading venture capital firm.  He was chosen by the U.S. Government as an "Outstanding American by Choice," one of the only 100 naturalized Americans to be so chosen since the

---

[3] Watson Decl. ¶ 9; Declaration of Lord Macdonald of River Glaven Kt QC, dated February 16, 2021 ("Macdonald Decl.") ¶ 8.

1  inception of the award.[4]  In 2015, he was appointed to the J. William Fulbright Foreign

2  Scholarship Board.[5]

3      ***Respondent.***  The Respondent is a private investigator based in Los Angeles,

4  CA, and residing[6] at ████████████████, Los Angeles, CA 90026.[7]  The

5  Respondent has stated that, while he has Identifying Information that may help

6  identify the D.C. Source, he will only provide that Identifying Information upon

7  receipt of a Subpoena.[8]

8      **B.     Petitioner's Encounter With British Police**

9      On May 27, 2017, Petitioner had consensual sexual intercourse with a female

10  acquaintance at a hotel in London.[9]  Later that day, Petitioner was woken by police

11  officers in his hotel room and arrested by City of London Police ("COLP") on

12  suspicion of sexual assault.[10]  The arrest was a total shock to the Petitioner, who was

13  understandably distressed and traumatized by it.[11]  Petitioner was released on bail on

14  May 28, 2017, and on July 28, 2017, the COLP confirmed to Petitioner that they

15  would be taking no further action against him due to insufficient evidence.[12]

16      After he received enquiries into the arrest by a journalist for a UK newspaper

17  (the *Sun*), on June 21, 2017, Petitioner obtained an injunction in England preventing

18  the *Sun* from naming or identifying Petitioner in relation to the arrest in any future

19

20  _____

    [4]  Macdonald Decl. ¶ 8.

21  [5]  Bento Decl. Ex. 12.

22  [6]  The Respondent's home address has been redacted herein and in the
    documents accomanying this Application pursuant to Local Rule 5.2-1, and which

23  provides that "[t]he filer shall . . . ensure that any document that contains a home
    address shall include only the city and state." L.R. 5.2-1.

24  [7]  Bento Decl. Exs. 3-4.

25  [8]  Bento Decl. ¶¶ 15-16.

26  [9]  Watson Decl. ¶¶ 10-11.

    [10]  *Id.* ¶ 10.

27  [11]  *Id.* ¶ 11.

28  [12]  *Id.* ¶ 12.

-3-

publications (the "Injunction").[13]  The Injunction was granted on the basis that if the *Sun* published an article speculating about Petitioner's arrest, it would have been a gross invasion of his privacy rights as protected by Article 8 of the Human Rights Act 1998.[14]

On August 1, 2017, COLP released a press statement which stated: "Following an investigation into a report of a rape at a location on Poultry, EC2 [London] on Saturday 27 May 2017, we can confirm that no further action will be taken.  A 43-year-old man from San Francisco was initially arrested on suspicion of rape before being released under investigation."[15]  Petitioner was not named, and per the press statement on August 1, 2017, COLP announced the investigation had ended.[16]

## C.    U.S.-Based Reporter (Mr. Marcus Baram) Obtains Forged Police Report

Based on information provided to Petitioner in response to prior Section 1782 subpoenas to Fast Company in the SDNY 1782 Actions, *see infra* I. H, in September 2017, Mr. Marcus Baram met with the D.C. Source in a café in Washington, D.C.[17] At that meeting, the D.C. Source handed the Mr. Baram a USB pen drive containing a copy of the Forged Police Report, which the D.C. Source allegedly obtained from a "male lawyer in the United Kingdom" ("UK Source").[18]  The D.C. Source also communicated additional fabricated allegations concerning the arrest, including the Petitioner purportedly paid the alleged victim money to "drop[ ] the charges", that the "[G]old [C]ommand" of the British Police was allegedly involved, and that the British

---

[13]  *Id.* ¶ 13.

[14]  *Id.* ¶ 13.

[15]  *Id.* ¶ 14.

[16]  *Id.* ¶ 14.

[17]   Bento Decl. Ex. 8; Macdonald Decl. Ex. 8.

[18]   Bento Decl. Exs. 6, 8, 9.

were allegedly "outraged" once the charges were dropped ("Other False Information").[19]



*The Respondent possesses information that could identify the D.C. Source

Figure 1: Potential Distribution Chain of Forged Police Report and False Information

### D.    Mr. Baram Makes Enquiries About The Arrest And The Forged Police Report

On or around October 13, 2017, Mr. Baram contacted the COLP press team to enquire further about Petitioner's arrest.[20]  COLP responded that the investigation into the arrest was no longer ongoing and as such no further action would be taken.[21]  On October 15, 2017, Mr. Baram contacted COLP again, this time to ask whether they would confirm it was Petitioner that was arrested.[22]  The following day, COLP responded that, as per COLP policy, they could neither confirm nor deny any name put to them in connection with an arrest.[23]  At the same time, COLP also confirmed that the investigation was not being reviewed and would not be reopened.[24]

On October 18, 2017, Mr. Baram emailed COLP attaching a copy of what he claimed to be a police report (i.e. the Forged Police Report) that he had obtained, which named the Petitioner and, as subsequently confirmed by COLP, contained false

---

[19] Bento Decl. Ex. 9.
[20] Watson Decl. ¶ 15.
[21] *Id.*
[22] *Id.*
[23] *Id.*.
[24] *Id.*

*EX PARTE* APPLICATION AND MEMORANDUM OF POINTS AND AUTHORITIES

information.[25]  Due to the fraudulent details contained in the Forged Police Report, anyone who read it would wrongly associate Petitioner with disreputable or notorious conduct.[26]  Mr. Baram requested that COLP confirm whether the Forged Police Report was authentic.[27]  On October 20, 2019—almost three weeks before Mr. Baram published his article—COLP responded that the Forged Police Report was not authentic, and clarified that report format used in the Forged Police Report was not one used by COLP, and further, that the purported police officer who authored the report was not, in fact, an officer employed by COLP.[28]

The COLP further confirmed its findings in an internal investigation into the Forged Police Report and shared the results of that investigation with Mr. Baram in an email dated October, 23, 2017, where COLP stated it believed that the Forged Police Report was "false."[29]  On October 24, 2017, COLP produced a report, which stated that it was "unlikely" that the Forged Police Report had been created within COLP or leaked by COLP to the media.[30]  Thereafter, on or around October 24, 2017, COLP confirmed to Mr. Baram and others that the report was a fake.[31]  In another email in response to Mr. Baram, dated October 31, 2017, COLP confirmed that Petitioner's case had not been reopened.[32]

---

[25]  Watson Decl. ¶ 16; *see also In Re Application of Shervin Pishevar for an Order to Take Discovery for Use in Foreign Proceedings Pursuant to 28 U.S.C. 1782*, No. 1:19-mc-00503-JGK-SDA ("Second SDNY 1782 Application"), Opinion & Order, ECF 77 at 13 (stating that "the Court notes that these documents contain false details from an arrest and investigation that later was dropped").

[26]  Watson Decl. ¶ 16.

[27]  *Id.*

[28]  Watson Decl. ¶ 16 & Ex. 3.

[29]  Watson Decl. ¶ 17 & Ex. 4.

[30]  Watson Decl. ¶ 18.

[31]  *Id.*

[32]  *Id.*

-6-

On November 7, 2017, Mr. Baram contacted COLP again and enquired whether they could provide further details about the case.[33]   COLP again confirmed Petitioner's case had not been reopened and stated they had no further comment on the matter.[34]

After being contacted by various media organizations requesting comment on the Forged Police Report, on November 8, 2017, Petitioner had no choice but to release a statement in which he confirmed that in May 2017 he was detained briefly in London in connection with an alleged sexual assault, an allegation categorically denied by Petitioner.[35]   The statement also confirmed that in July 2017 he was informed that no further action would be taken against him.[36]

**E.     Mr. Baram's Publication Of Article Disseminating Forged Police Report**

Notwithstanding the fact that COLP previously communicated to Mr. Baram that the Forged Police Report was false, on November 8, 2017, Mr. Baram and Fast Company nonetheless published the Baram Article.[37]   The Article made reference to details contained in the Forged Police Report, including false information about the circumstances leading to the arrest.[38]   The Baram Article was wrongly afforded greater credibility because it referred to the details of the Forged Police Report.[39]

The following day, on November 9, 2017, more publications released articles referring to the contents of the Forged Police Report.   The *New York Post* published an article entitled "Billionaire ally of ex-Uber CEO busted on rape charge" which

---

[33]   Watson Decl. ¶ 19.
[34]   *Id.*
[35]   *Id.* ¶ 20.
[36]   *Id.*
[37]   *Id.* ¶ 21 & Ex. 5.
[38]   *Id.*
[39]   Watson Decl. ¶ 21.

included details from the Forged Police Report.[40]  *Forbes* published an article entitled "Shervin Pishevar, arrested but never charged over alleged rape, says he's a victim of 'smear campaign,'" which stated that "a copy of the police report obtained by Forbes, confirms the details of the arrest and the identity of the suspect."[41]

### F.  Petitioner Uncovers, And British Police Confirm, That Report Is Fake

On November 9, 2017, Hickman & Rose, English criminal counsel for Petitioner, contacted COLP to inquire whether any private information relating to Petitioner had been disclosed to the media following the arrest.[42]  On November 10, 2017, COLP confirmed that no such disclosure had been made and Hickman & Rose responded with a request for a copy of the Forged Police Report.[43]  On November 13, 2017, COLP declined the request due to ongoing enquiries as to the purported commission of any criminal offences related to the Forged Police Report.[44]

In an email to COLP dated September 28, 2018, Hickman & Rose renewed their request for a copy of the Forged Police Report as well as confirmation as to the source that provided it to COLP.[45]  In a response dated October 25, 2018, COLP's in-house lawyer stated that they "can confirm that there is no criminal investigation in respect of the document in question.  The City of London Police is content for me to inform you that the screenshot of the document was supplied to them by Marcus Baram of Fast Company.  The City of London Police is not prepared to provide a copy of the screenshot without a court order requiring disclosure."[46]

---

[40] *Id.* ¶ 22.
[41] *Id.*
[42] *Id.* ¶ 23.
[43] *Id.*
[44] *Id.*
[45] *Id.* ¶ 25.
[46] *Id.* ¶ 25 & Ex 6.

On November 1, 2018, Hickman & Rose made a Subject Access Request (similar to a Freedom of Information request in the U.S.) to the COLP for the Forged Police Report.[47]  On April 4, 2019, Hickman & Rose subsequently made a disclosure application to the English High Court seeking to compel the COLP to disclose the information that had been requested.[48]  On May 29, 2019, the English High Court ordered the COLP to comply with the request.[49]  On the same day, the COLP complied and provided a copy of the Forged Police Report to Hickman & Rose.[50]  The COLP further confirmed via a signed witness statement from Teresa La Thangue (COLP's Communications Director) that the Forged Police Report was fake:

> "2. On the 18 October 2017, Corporate Communications received **an email from Marcus Baram, a journalist, stating that <u>he had obtained the 'arrest report'</u>** in relation to matter that he had previously enquired about; a report of rape at the Ned Hotel on the 27 May 2017. I now produce marked "TLT/I" a copy of the said email.
>
> 3. In his email of the 18 October 2017, Marcus Baram asked us to verify that the document attached to his email was authentic. The attached document was a screenshot of what appeared to be an arrest report. I now produce marked "TLT/2" a copy of the attachment
>
> 4. The 'arrest report' was sent to the City of London Police's Professional Standards Directorate who were **able to confirm that the document was not a City of London Police document**.
>
> 5. Thereafter, **<u>Marcus Baram was told</u>, along with any other journalists who enquired, <u>that it was a fake</u>, explaining that it was not a document that is used by the City of London Police, and that the officer named does not work and has not worked for the City of London Police**."[51]

---

[47]  Watson Decl. ¶ 26; Macdonald Decl. ¶ 17.

[48]  Macdonald Decl. ¶ 18; Watson Decl. ¶ 26.

[49]  Macdonald Decl. ¶ 18.

[50]  Watson Decl. ¶ 27. Specifically, the copy was a screenshot of the purported Forged Police Report which had been sent by Mr. Baram to the COLP.

[51]  Macdonald Decl. ¶ 19 & Ex. 5 (emphasis added); Watson Decl. ¶ 29.

-9-

These findings are further supported by Detective Sergeant Jonathan Witt (a COLP officer), who concluded in a report dated October 24, 2017 that the Forged Police Report was "not authentic."[52]  On June 11, 2019, the COLP provided additional documents to Petitioner, detailing the COLP's internal investigation into the Forged Police Report's authenticity as well as contact with media outlets following enquiries into the Petitioner's arrest.[53]  Whilst this information was helpful, it failed to assist the Petitioner in identifying the author(s) or distributor(s) of the Forged Police Report.[54]

### G.    Petitioner's Contemplated Proceedings

Petitioner has suffered considerable reputational harm as a result of the creation and dissemination of the lies contained in the Forged Police Report.  Accordingly, Petitioner contemplates initiating criminal and civil proceedings against the Forgers in the United Kingdom.[55]

***Contemplated Criminal Proceedings.***   Petitioner seeks to initiate, either through public or private prosecutions,[56] criminal proceedings in England & Wales against the Forgers for violations of the Forgery and Counterfeiting Act 1981, the Fraud Act 2006, and the Malicious Communications Act 1988 ("Contemplated Criminal Proceedings").[57]  As explained in the Declaration of Lord Macdonald of River Glaven Kt QC—***the former Director of Public Prosecutions in England & Wales***—the Forgers have contravened the Forgery and Counterfeiting Act 1981 because in creating and maliciously disseminating the Forged Police Report—plainly

---

[52]  Watson Decl. ¶ 28.

[53]  *Id.* ¶ 27.

[54]  Macdonald Decl. ¶ 20.

[55]  *Id.* ¶¶ 24-38; Watson Decl. ¶¶ 33-44.

[56] Under English law, a victim of a crime may initiate a private prosecution without police or State intervention. *See* Macdonald Decl. ¶¶ 36-38.

[57]  Macdonald Decl. ¶¶ 24-38.

a false instrument under English law—the Forgers intended by their acts to harm, and actually harmed, the Petitioner.[58]   The Forgers also contravened Sections 2, 6, and 7 of the Fraud Act 2006 under English law because the Forged Police Report was intended by the Forgers to be perceived by its readers as a genuine police report; the implied assertion that it was genuine amounted to a false representation; the Forgers knew this was a false representation; and their plain and inescapable intention in making this false representation was to cause loss to the Petitioner.[59]   Similar reasoning applies equally to anyone further down the chain who passed the Forged Police Report on knowing it was a fake and intending thereby to cause loss to the Petitioner.   Similarly, the Forgers contravened the Malicious Communications Act 1988 because when the Forgers conveyed the report to others, they did so knowing it contained false information (because that information had been invented), and with full awareness that it would inevitably be drawn to the Petitioner's attention (thus establishing the necessary intention under English law), with the equally inevitable result that the Petitioner would be caused distress and anxiety.[60]   To this end, Petitioner has retained English counsel to pursue these claims, who have already begun preparing pleadings, including criminal summonses.[61]

**Contemplated Civil Proceedings.**   The Petitioner contemplates initiating civil proceedings against the Forgers.[62]   Specifically, Petitioner intends to bring a claim of negligent misstatement, libel, and/or slander against the Forgers on the theory that the Forgers owed Petitioner a duty of care not to publish private information about him which they knew to be false, yet did so regardless, which information the media (and

---

[58]  Macdonald Decl. ¶¶ 27-28.
[59]  *Id.* ¶¶ 29-30.
[60]  *Id.* ¶¶ 32-33.
[61]  *Id.* ¶ 24.
[62]  Watson Decl. ¶ 33.

*EX PARTE* APPLICATION AND MEMORANDUM OF POINTS AND AUTHORITIES

possibly others) have relied on, thereby causing Petitioner to suffer loss, including serious harm to his reputation ("<u>Contemplated Civil Proceedings</u>").[63]

To this end, the Petitioner has retained English counsel to pursue civil claims in England & Wales, including (without limitation) negligent misstatement, libel, and/or slander.[64]  English counsel has begun preparing pleadings to pursue these claims.[65]  While these claims may initially be brought against Persons Unknown (akin to John Doe defendants in the US), it would be more efficient from the outset to initiate these proceedings against a named defendant(s).[66]

**H.    The New York Section 1782 Applications**

On August 6, 2019, the Petitioner petitioned the U.S. District Court for the Southern District of New York ("<u>SDNY</u>") for an order authorizing Petitioner to conduct discovery from Fast Company relating to the Baram Article ("<u>First SDNY 1782 Application</u>").  On August 9, 2019, the Magistrate Judge Stewart D. Aaron granted the First Section 1782 Application.[67]  The Petitioner subsequently served subpoenas on Fast Company and Mansueto Ventures LLC (Fast Company's publisher).  On August 27, 2019, Fast Company/Mansueto requested a 2-week extension to produce responsive documents pursuant to the subpoenas.[68]  Petitioner consented to this request.[69]

---

[63] *Id.* ¶¶ 33-44.

[64] *Id.* ¶¶ 33-34, 46-48.

[65] *Id.*

[66] *Id.* ¶¶ 35, 49.   A Persons Unknown lawsuit would need to be amended within months to add the names of the defendant(s).  Thus, and since it is unclear how this Application will unfold, it would be more efficient and judicially economical to file the foreign civil lawsuit onces those name(s) are identified.

[67] Bento Decl. Ex. 10.

[68] Bento Decl. Ex. 11.

[69] *Id.*

Between September 17, 2019 and October 21, 2019, Fast Company/Mansueto produced certain information about the Forged Police Report[70] but Mr. Baram (through Fast Company) refused to produce Identifying Information about the identity of the D.C. Source, on the basis that Mr. Baram was purportedly permitted to withold the identity of the D.C. Source under the "reporter's privilege."[71]

On October 31, 2019, Petitioner therefore filed in the SDNY a Section 1782 application against Mr. Baram to obtain Identifying Information sufficient to identify the D.C. Source ("Second SDNY 1782 Application").[72]   On February 18, 2020, Magistrate Judge Stewart Aaron denied Petitioner's application, finding that although he had met the mandatory criteria of § 1782, the court held that Mr. Baram could invoke the reporter's privilege to withold the name of the D.C. Source.[73]

On March 3, 2020, Petitioner filed a motion for reconsideration, and on April 14, 2020, the court granted the motion for reconsideration but adhered to its prior decision because Petitioner had "failed to make a clear and specific showing that the identity of the [D.C. Source] is not obtainable from other available sources," noting that "Petitioner ha[d] tools available to him to obtain discovery" from three other potential sources.[74]   On September 8, 2020, Petitioner filed a motion to supplement, amend and/or renew his application, which included sworn affidavits from those three

---

[70]   The information produced by Fast Company confirmed that Mr. Baram was told by the City of London Police that the Forged Police Report was not authentic, that the purported police officer on the report does not work for the police, and that in any event the forged report did not look like the type of report the City of London Police would use.  *See, e.g.*, Watson Decl., Ex. 3.  For reasons that are unknown to Petitioner, Mr. Baram nevertheless proceeded to publish his story making reference to the Forged Police Report, including to the report's content.  *See id.* Ex. 5.

[71]   Bento Decl. Exs. 5, 7.

[72]   To be clear, Petitioner does not seek information already produced by Fast Company, Mansueto, or Mr. Baram pursuant to the First Section 1782 Application.

[73]   *In re Application of Shervin Pishevar for an Order to take Discovery for use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782*, 439 F. Supp. 3d 290, 301-07 (S.D.N.Y. 2020).

[74]   *In re Pishevar*, 1:19-MC-00503 (JGK), 2020 WL 1862586, at *4-5 (S.D.N.Y. Apr. 14, 2020) (citation omitted).

-13-

potential sources stating in substance that none of these individuals has any knowledge regarding the D.C. Source or of the provenance of the Forged Police Report.[75]

On October 3, 2020, the court granted Petitioner's renewed application in the Second SDNY 1782 Application and found that for purposes of the reporter's privilege analysis Petitioner had "exhausted reasonable alternative sources of information" and found that "the reporter's privilege has been overcome."[76] Accordingly, the court ordered Mr. Baram to disclose to Petitioner the name and location of the D.C. Source.[77]

On October 19, 2020, Mr. Baram filed objections against the court's October 3, 2020 order.[78] On November 2, 2020, Petitioner filed his opposition to Mr. Baram's objections.[79] On January 21, 2021, the court scheduled oral argument for February 12, 2021 ("SDNY Hearing").[80] On February 2, 2020, Mr. Baram, with Petitioner's consent, moved to adjourn the SDNY Hearing to February 19, 2021.[81] Upon receiving new information from the Respondent about the D.C. Source, Petitioner, with Mr. Baram's consent, on February 9, 2021, moved to adjourn the SDNY Hearing pending investigation into this new information.[82] On February 10, 2021, the court granted the parties' request and adjourned the SDNY Hearing to April 22, 2021.[83]

---

[75] *Second SDNY 1782 Application*, ECF 86-92.
[76] *In re Pishevar*, 1:19-MC-00503 (JGK), 2020 WL 8299764, at *5 (S.D.N.Y. Oct. 3, 2020).
[77] *Id.*
[78] *Second SDNY 1782 Application*, ECF 100.
[79] *Second SDNY 1782 Application*, ECF 101.
[80] *Second SDNY 1782 Application*, Minute Entry dated January 21, 2021.
[81] *Second SDNY 1782 Application*, ECF 102.
[82] *Second SDNY 1782 Application*, ECF 104.
[83] *Second SDNY 1782 Application*, ECF 105.

*EX PARTE* APPLICATION AND MEMORANDUM OF POINTS AND AUTHORITIES

On February 23, 2021, Petitioner filed the present Application seeking documentary and testimonial evidence from the Respondent about the identity of the D.C. Source.

## I.      Respondent Possesses Highly Material Information Concerning The D.C. Source

The Respondent has confirmed that he possesses Identifying Information that may assist the identification of the D.C. Source, *i.e.* the individual who met with Mr. Baram in or around September 2017 and provided him with the Forged Police Report and Other False Information.[84]  The Respondent has explained that he is unable to provide this Identifying Information unless ordered to do so by a Subpoena.[85]  The Respondent is therefore in possession, custody, and control of Identifying Information highly material to the Contemplated English Proceedings.   This Identifying Information, *inter alia*, relates to the identity and location of the D.C. Source, who received the Forged Police Report and Other False Information from the UK Source; the identity and location of the individual capable of identifying the UK Source; and any other information relating to the provenance and falsity of the report, including anyone who may have commissioned or had any involvement in planning, preparing, or disseminating the Forged Police Report and Other False Information—facts and issues that are critical and indispensable to the Contemplated English Proceedings.[86]

## II.     ARGUMENT

### A.      Legal Framework

Section 1782 of Title 28 of the United States Code permits United States District Courts to grant discovery for use in a foreign proceeding.  The statute, in relevant part, states:

> The district court of the district in which a person resides or is found may order him to give his testimony or statement or to produce a document or other thing for use in a proceeding in a foreign or international tribunal

---

[84]   Bento Decl. ¶ 15.

[85]   Bento Decl. ¶ 16.

[86]   Macdonald Decl.¶¶ 39-40; Watson Decl.¶¶ 45-49..

-15-

. . . . The order may be made . . . upon the application of any interested person . . . .

28 U.S.C. § 1782.

Courts routinely grant Section 1782 applications on an ex parte basis. *See In Re Letters Rogatory From Tokyo Dist., Toyko, Japan*, 539 F.2d 1216, 1219 (9th Cir. 1976) (granting § 1782 request on *ex parte* basis and noting that witnesses subject to discovery requests "can and have raised objections and exercised their due process rights by motions to quash the subpoenas"); *see also* Petitioner's Request to Proceed *Ex Parte* ¶¶ 2-3 (collecting cases).

An application made pursuant to Section 1782 must satisfy three statutory requirements:  (1) the person from whom discovery is sought must reside or be found in the district in which the application is filed; (2) the discovery must be for use in a proceeding before a foreign tribunal; and (3) the application must be made by a foreign or international tribunal or any interested person.  28 U.S.C. § 1782(a); *Akebia Therapeutics, Inc. v. FibroGen, Inc.*, 793 F.3d 1108, 1110 (9th Cir. 2015).

After determining that the three statutory requirements are satisfied, courts may then consider four discretionary factors in deciding whether to grant a Section 1782 application, namely: (i) whether the documents or testimony sought are within the foreign tribunal's jurisdictional reach, and thus accessible absent Section 1782 aid; (ii) the nature of the foreign tribunal, the character of the proceedings underway abroad, and the receptivity of the foreign government or the court or agency abroad to U.S. federal-court judicial assistance; (iii) whether the Section 1782 request conceals an attempt to circumvent foreign proof-gathering restrictions or other policies of a foreign country or the United States; and (iv) whether the subpoenas contain unduly intrusive or burdensome requests.  *See Intel Corp v. Advanced Micro Devices, Inc.*, 542 U.S. 241, 244, 264–65 (2004); *In re Golden Root Invs. PTE Ltd.*, 2019 WL 8011743, at *1 (C.D. Cal. Sept. 6, 2019).

Moreover, courts in this Circuit evaluate discovery requests under Section 1782 in light of the "twin aims" of the statute: "providing efficient assistance to participants in international litigation, and encouraging foreign countries by example to provide similar assistance to courts in the United States." *Siemens AG v. W. Digital Corp.,* 2013 WL 5947973, at *2 (C.D. Cal. Nov. 4, 2013). And the Supreme Court and the Ninth Circuit have both acknowledged a Congressional intent to provide a liberal avenue to discovery in aid of foreign and international proceedings. *See, e.g.*, *Intel*, 542 U.S. at 247-48, 260; *In re Premises Located at 840 140th Ave. NE, Bellevue, Wash.*, 634 F.3d 557, 562–63 (9th Cir. 2011) ("In the 20th century, Congress . . . remov[ed] more of the absolute restrictions on the courts' ability to provide assistance [under Section 1782] . . . . One of the important congressional purposes in broadening the scope of federal-court assistance was to encourage reciprocity by other nations.") (citing cases and internal citations omitted); *Advanced Micro Devices, Inc. v. Intel Corp.*, 292 F.3d 664, 669 (9th Cir. 2002) (The "allowance of liberal discovery seems entirely consistent with the twin aims of Section 1782"), *aff'd*, 542 U.S. at 241; *see also Brandi-Dohrn v. IKB Deutsche Industriebank AG,* 673 F.3d 76, 80 (2d Cir. 2012) ("[T]he statute has, over the years, been given increasingly broad applicability.") (internal quotation marks and citation omitted).

### A.   Petitioner Satisfies The Statutory Requirements Of 28 U.S.C. § 1782.

Petitioner satisfies the three statutory requirements of section 1782: (1) the Respondent is "found" in the Central District of California; (2) the requested Identifying Information is for use in the Contemplated English Proceedings; and (3) Petitioner is an "interested person" as the putative plaintiff and complainant in those foreign proceedings.[87]

---

[87]   *See also In re Application of Shervin Pishevar for an Order to take Discovery for use in Foreign Proceedings Pursuant to 28 U.S.C. § 1782*, 439 F. Supp. 3d 290, 301-03 (S.D.N.Y. 2020).

**1.      Respondent Is "Found" In The Central District of California.**

The Respondent resides and works in Los Angeles and therefore resides and is "found" in this District for purposes of Section 1782.[88]

**2.      The Discovery Sought Is For Use In Foreign Proceedings.**

The Identifying Information sought in the Subpoenas is "for use" in foreign proceedings.  *See In re Application of Shervin Pishevar*, 439 F. Supp. 3d 290, 302 (S.D.N.Y. 2020) (holding that Petitioner's need for the identity of the D.C. Source meets the "for use" requirement under Section 1782).  Section 1782 does not require the foreign proceedings to be "pending" or "imminent," and permits courts to authorize discovery provided that the foreign proceedings are "within reasonable contemplation" when the request for judicial assistance is filed.  *In re Pioneer Corp. for an Order Permitting Issuance of Subpoenas to Take Discovery in a Foreign Proceeding*, 2018 WL 2146412, at *2, *6 (C.D. Cal. May 9, 2018) (citation omitted); *see also Intel*, 542 U.S. at 258–59 (noting that "[i]t is not necessary . . . for the [adjudicative] proceeding to be pending at the time the evidence is sought, and that the statute requires only that the evidence is eventually to be used in such a proceeding") (citation omitted).

Petitioner's Contemplated English Proceedings qualify as "foreign proceedings" for purposes of Section 1782.  Here, the declarations of Petitioner's English lawyers, which aver that they have been retained to pursue the claims articulated in their declarations and that they have begun preparing the necessary pleadings, is objective evidence that Petitioner's "foreign proceeding" is "within reasonable contemplation."  *See In re Hornbeam Corp.*, 722 F. App'x 7, 9-10 (2d Cir. 2018) (holding that a foreign proceeding was reasonably contemplated where the applicant "represented that it intended to initiate further litigation," and "articulated a theory on which it intended to litigate[.]") (citation omitted); *In re Furstenberg Fin.*

---

[88]   Bento Decl. Exs. 3, 4.

*EX PARTE* APPLICATION AND MEMORANDUM OF POINTS AND AUTHORITIES

*SAS*, 2018 WL 3392882, at *4 (S.D.N.Y. July 12, 2018) (holding that for use requirement was been met where petitioners swore that they intended to file a criminal complaint in Luxembourg Criminal Court and articulated a specific legal theory on which they intended to rely); *see also In re: Application of Bracha Found.*, 663 F. App'x 755, 763-64 (11th Cir. 2016) (affirming district court's decision that foreign proceeding was within reasonable contemplation because "[applicants] have represented their intention to return to litigation in the BVI and have articulated a theory upon which they intend to litigate"); *Bravo Express Corp. v. Total Petrochemicals & Ref. U.S.*, 613 F. App'x 319, 323 (5th Cir. 2015) (finding that the application was for use in a contemplated proceeding because, *inter alia*, Petitioner filed a "sworn affidavit" from his foreign lawyer that he had prepared papers).

The Contemplated English Proceedings qualify as a proceeding in a "foreign or international tribunal" for purposes of Section 1782.  Indeed, numerous courts have found that civil proceedings before English courts satisfy Section 1782.  *See e.g. In re Letter of Request from Crown Prosecution Serv. of U.K.*, 870 F.2d 686, 691 (D.C.Cir.1989) ("[T]here is no question that British courts qualify as 'tribunals' [for 1782 purposes].");  *In re Ex Parte Application of Glob. Energy Horizons Corp.,* 2015 WL 1325758, at *2 (N.D. Cal. Mar. 24, 2015) (holding that "proceeding before the High Court of Justice in England, United Kingdom [] is undisputedly a 'proceeding before a foreign or international tribunal' under Section 1782(a)") (citations omitted); *In re Catalyst Managerial Servs., DMCC*, 680 F. App'x 37, 41 (2d Cir. 2017).  With regard to the Contemplated Criminal Proceedings in particular, Section 1782(a) explicitly provides that the statute can be used to obtain discovery for use in "criminal investigations conducted before formal accusation," and courts in this Circuit have confirmed the availability of Section 1782 for such criminal investigations.  28 U.S.C. § 1782(a); *In re Societe d'Etude de Realisation et d'Exploitation pour le Traitement du Mais*, 2013 WL 12440994, at *1-2 (N.D. Cal. Nov. 21, 2013) (granting 1782 application for use in contemplated criminal investigation in the United Kingdom); *In*

-19-

*re Ex Parte Application of Jommi,* 2013 WL 6058201, at *3 (N.D. Cal. Nov. 15, 2013). Thus, the Contemplated English Proceedings plainly qualify as foreign proceedings under Section 1782.

Petitioner is not required to show that the Identifying Information sought would be discoverable or admissible in the Contemplated English Proceedings. *Intel*, 542 U.S. at 260 ("[N]othing in the text of § 1782 limits a district court's production-order authority to materials that could be discovered in the foreign jurisdiction if the materials were located there."). Rather, the burden on the Petitioner is *de minimis*; petitioners need only show that the evidence is relevant to the Contemplated English Proceedings. *See IPCom GMBH & Co. KG v. Apple Inc.*, 61 F. Supp. 3d 919, 924 (N.D. Cal. 2014) (finding that even 1782 disovery that has a low probability of being relevant to the foreign proceedings satisfy the statutory factors); *In re Pioneer Corp.*, 2018 WL 4963126, at *5 (C.D. Cal. Aug. 27, 2018).

Here, the Petitioner plainly satisfies this requirement. The Identifying Information sought in the Subpoenas is highly relevant to the Contemplated English Proceedings. Indeed it relates to the identity and location of the D.C. Source, *i.e.* the only known person who is able to identify the UK Source and any other information relating to the provenance and falsity of the report, including anyone who may have commissioned or had any involvement in planning, preparing, or disseminating the Forged Police Report and Other False Information—facts and issues that are critical to the Contemplated English Proceedings. The Petitioner will use this Identifying Information to plead and prove his civil and criminal claims in the United Kingdom.[89]

### 3. Petitioner Is An "Interested Person."

Finally, Section 1782 requires persons seeking discovery to show they possess a reasonable interest in the foreign proceedings. While Section 1782 broadly covers those with the right to participate and submit evidence in foreign proceedings, *see*

---

[89] Watson Decl. ¶ 49; Macdonald Decl. ¶ 40.

*Certain Funds, Accounts &/or Inv. Vehicles v. KPMG, L.L.P.*, 798 F.3d 113, 120 (2d Cir. 2015), there is "[n]o doubt litigants are included among, and may be the most common example of, the 'interested person[s] who may invoke § 1782[,]" *Intel*, 542 U.S. at 256; *Ex Parte ANZ Commodity Trading Pty Ltd.*, 2017 WL 3334878, at *3 (N.D. Cal. Aug. 4, 2017) (applicant qualifies as "interested person" because "it will be a party to the anticipated litigation").  Petitioner will be a party to the Contemplated English Proceedings and is therefore an "interested person" under Section 1782.[90]

### B.   All Of The Discretionary Factors Of Section 1782 Weigh In Favor of Permitting The Discovery Petitioner Seeks.

Once the threshold requirements under section 1782 are met, the Court should consider the four discretionary "*Intel* factors."  Each of these factors weighs in favor of granting the requested discovery here.

*First*, the Respondent will not be a party to the Contemplated English Proceedings.  *Second*, there is no reason to believe that English courts would be unreceptive to evidence obtained through Section 1782 discovery.  *Third*, Petitioner is acting in good faith and is not seeking to avoid any foreign restriction on gathering evidence.  *Fourth*, Petitioner's narrow requests are carefully circumscribed and targeted to key facts so as to avoid undue burden on the Respondent.

### 1.   The First *Intel* Factor Favors Granting Discovery.

The first *Intel* factor asks whether the party from whom discovery is sought is a party to the foreign proceeding.  "[W]hen the person from whom discovery is sought

---

[90]   With regard to the Contemplated Criminal Proceedings, if a public prosecution is elected, Petitioner qualifies as an "interested person" as a victim and aggrived party of the crime.  *See e.g. In re Ex Parte Application of Jommi*, 2013 WL 6058201, at *3 (N.D. Cal. Nov. 15, 2013) ("Petitioner is the complainant in the criminal proceeding and thus an interested person for purposes of § 1782(a).") (citation omitted); *In re Children's Inv. Fund Found. (UK)*, 363 F. Supp. 3d 361, 372 (S.D.N.Y. 2019) (same); *In re Ex Parte Application of SERETM*, 2013 WL 12440994, at *1 (N.D. Cal. Nov. 21, 2013) (holding that a victim of fraud is an interested person under Section 1782).  Indeed, Petitioner will have the practical ability to introduce evidence concerning the identity of the Forger regardless of which type of prosecution (private or public) is initiated.  Macdonald Decl. ¶¶ 27-38.

is a participant in the foreign proceeding  . . . the need for § 1782(a) aid generally is not as apparent as it ordinarily is when evidence is sought from a nonparticipant in the matter arising abroad." *Intel*, 542 U.S. at 244, 264.  Here, the Respondent will not be a party to the Contemplated English Proceedings.[91]

### 2.    The Second *Intel* Factor Favors Granting Discovery.

Under the second *Intel* factor, this Court should look to whether the foreign tribunal would be receptive to the evidence obtained through section 1782.  *See Siemens*, 2013 WL 5947973, at *3 ("The second *Intel* factor asks whether the foreign court is willing to consider the information sought.") (citation omitted).  There is a strong presumption that the foreign tribunal will be receptive to evidence obtained in the United States.  Indeed, "when evaluating whether foreign tribunals would accept U.S. assistance, courts look for *authoritative proof* that a foreign tribunal would *reject* evidence obtained with the aid of section 1782."  *Id.* (emphasis added and citation omitted); *Euromepa S.A. v. R. Esmerian, Inc.*, 51 F.3d 1095, 1102 (2d Cir. 1995) ("Absent specific directions to the contrary from a foreign forum, the statute's underlying policy should generally prompt district courts to provide some form of discovery assistance." ); *Palantir Techs., Inc. v. Abramowitz*, 415 F. Supp. 3d 907, 915 (N.D. Cal. 2019) ("[I]n the absence of authoritative proof that a foreign tribunal would reject evidence obtained with the aid of section 1782, courts tend to err on the side of permitting discovery.") (citation omitted), *appeal dismissed sub nom. In re Palantir Techs., Inc.*, 2020 WL 3988000 (9th Cir. June 22, 2020) .

The English courts will be receptive to evidence obtained through this Application.[92]  *In re Application of Shervin Pishevar*, 439 F. Supp. 3d 290, 303-304 (S.D.N.Y. 2020) (holding that Petitioner "has made a showing that the English courts would be receptive to evidence obtained" through the 1782 application).  Petitioner

---

[91]   Watson Decl. ¶ 34 n.8; Macdonald Decl. ¶ 26 n.14.

[92]   Watson Decl. ¶¶ 50-53; Macdonald Decl. ¶¶ 41-46.  At minimum, there is no authoritative proof that the English courts would reject the evidence obtained here.

*EX PARTE* APPLICATION AND MEMORANDUM OF POINTS AND AUTHORITIES

1   will have the opportunity to use the Identifying Information obtained in this

2   Application in pleading his claims (i.e., in the complaint/claim form, and criminal

3   complaint and/or criminal summons) as well as to prove its claims and enforce any

4   remedies and/or sanctions.[93]

5               **3.      The Third *Intel* Factor Favors Granting Discovery.**

6          The third *Intel* factor looks to "whether the § 1782(a) request conceals an

7   attempt to circumvent foreign proof-gathering restrictions or other policies of a

8   foreign country or the United States."   *Intel*, 542 U.S. at 265.   The *Intel* Court

9   expressly rejected the notion that Section 1782 requires that the evidence sought must

10  be discoverable in the foreign proceeding itself, and the Ninth Circuit has added that

11  the specific documents or testimony discovered need not be admissible abroad. *Intel*,

12  292 F.3d at 669 (9th Cir. 2002), *aff'd*, 542 U.S. 241; *see also Brandi-Dohrn*, 673 F.3d

13  at 82 ("While *Intel* concerned the *discoverability* of evidence in the foreign

14  proceeding, we see no reason why it should not extend to the *admissibility* of evidence

15  in the foreign proceeding. As in *Intel*, there is no statutory basis for any admissibility

16  requirement.") (emphasis in original); *Intel*, 542 U.S. at 261 ("A foreign nation may

17  limit discovery within its domain for reasons peculiar to its own legal practices,

18  culture, or traditions—reasons that do not necessarily signal objection to aid from

19  United States federal courts.").   Nor is there any requirement that Petitioner must

20  exhaust his remedies in the foreign court first.   *See In re Cathode Ray Tube (CRT)*

21  *Antitrust Litig.*, 2013 WL 183944, at \*3 (N.D. Cal. Jan. 17, 2013) ("Courts need not

22  determine that an applicant has exhausted  its discovery attempts abroad.") (citing

23  *Euromepa*, 51 F.3d at 1098 ("Relying on the plain language of the statute, this Court

24  has also refused to engraft a 'quasi-exhaustion requirement' onto section 1782 that

25  would force litigants to seek 'information through the foreign or international

26  tribunal' before requesting discovery from the district court.") (citation omitted));

27

28

---

[93]   Watson Decl. ¶¶ 45-49; Macdonald Decl. ¶¶ 39-40.

-23-

*Intel*, 542 U.S. at 244 ("Section 1782 is a provision for assistance to tribunals abroad. It does not direct [U.S.] courts to engage in comparative analysis to determine whether analogous proceedings exist here."); *In re Application for an Order Permitting Metallgesellschaft AG to take Discovery*, 121 F.3d 77, 79 (2d Cir. 1997) ("[A] 'quasi-exhaustion requirement' finds no support in the plain language of the statute and runs counter to its express purposes[.]") (citation omitted).

Here, there is no reason to believe that any of the discovery sought violates any foreign laws and/or public policy. Petitioner does not seek customer account information, state secrets, or attorney-client communications—he merely seeks Identifying Information relating to the individual who provided a forged police report to a journalist. The English jurisdiction does not have any law or public policy against such discovery. To the contrary, as the Declaration of Lord Macdonald of River Glaven Kt QC notes, it would be in the public interest to prosecute the Forgers of such a document and discovering its provenance is the only way to achieve that aim.[94]

### 4.    The Fourth *Intel* Factor Favors Granting Discovery.

The fourth *Intel* factor looks to whether the requests are "unduly intrusive or burdensome." *Intel*, 542 U.S. at 245, 265. The standard is substantially the same as in ordinary domestic civil litigation under the Federal Rules of Civil Procedure. "The reference in § 1782 to the Federal Rules suggests that under ordinary circumstances the standards for discovery under those rules should also apply when discovery is sought under the statute." *In re Bayer AG*, 146 F.3d 188, 195 (3d Cir. 1998). Here, the document and limited deposition[95] requests are narrowly tailored, temporally

---

[94]   Macdonald Decl. ¶ 35; *In re Application of Shervin Pishevar*, 439 F. Supp. 3d 290, 302 (S.D.N.Y. 2020) (holding that Petitioner's application did not seek to cirvumvent English laws and policies).

[95]   Petitioner would also be willing to withdraw the deposition in exchange for the Respondent providing a sworn affidavit containing information sufficient to identify the D.C. Source.

limited, and directly relevant to the issues in the foreign proceedings.[96]  In addition, Petitioner is willing to discuss a potential protective order with the Respondent concerning disclosure of information to be produced by the Respondent.  *See, e.g. Minatec Fin. S.A.R.L. v. SI Group Inc.*, 2008 WL 3884374, at *1 (N.D.N.Y. Aug. 18, 2008) ("[T]he beauty of § 1782 is that it permits this Court to impose a protective order that would extinguish any concern that privileged, confidential, or proprietary information would be indecorously revealed.").

Whatever burden the Respondent may incur by producing the requested discovery, it is both modest and proportionate given the circumstances.

## III.   CONCLUSION

For the foregoing reasons, Petitioner respectfully requests that the Court (a) grant the *Ex Parte* Application And Petition For An Order To Conduct Discovery; (b) enter the Proposed Order attached to the Bento Declaration as Exhibit 1, (c) authorize Petitioner, pursuant to 28 U.S.C. § 1782, to serve the Subpoenas; and (d) grant any and all other relief to Petitioner as is deemed just and proper.

---

[96]   While Petitioner understands that the Respondent may be prevented from disclosing the Identifying Information absent the Subpoenas due to the existence of a purported confidentiality agreement between the Respondent and a third party, once the Subpoenas have been served, such a confidentiality agreement cannot exempt the Respondent from his compliance obligations.  *See, e.g.,BLK Enterprises, LLC v. Unix Packaging, Inc.*, 2018 WL 5993841, at *4 (C.D. Cal. Sept. 26, 2018) ("[P]arties cannot simply vitiate their discovery obligations by asserting third party privacy rights based on NDAs."); *Saini v. Int'l Game Tech.*, 434 F. Supp. 2d 913, 922 (D. Nev. 2006) (stating that it is an "unremarkable proposition that confidentiality agreements will not stand as a barrier to discovery"); *In re C.R. Bard, Inc. Pelvic Repair Sys. Prods. Liab. Litig.*, 287 F.R.D. 377, 384 (S.D. W.Va. 2012) (collecting cases and stating that "private confidentiality agreements do not preclude the production of documents for the purpose of discovery."); *see also Ubiquiti Networks, Inc. v. Kozumi USA Corp.*, 295 F.R.D. 517, 525, n.4 (N.D. Fla. 2013) (identity of a private investigator's client is not protected from disclosure).

*EX PARTE* APPLICATION AND MEMORANDUM OF POINTS AND AUTHORITIES

1    Dated:   Los Angeles, CA             Respectfully submitted,
2           February 23, 2021

                                          */s/ Randa A.F. Osman*

3                               Randa A.F. Osman (SBN 150798)
                               randaosman@quinnemanuel.com
4                               QUINN EMANUEL URQUHART &
                              SULLIVAN, LLP
5                               865 S. FIGUEROA ST., FLOOR 10
                              LOS ANGELES, CA 90017
6                               Telephone: (213) 443-3000
                              Facsimile: (213) 443 3100

7

8                               Lucas V.M. Bento (*pro hac vice*
                              *forthcoming*)
9                               Jingtian Chen (*pro hac vice forthcoming*)
                              lucasbento@quinnemanuel.com
10                              jingtianchen@quinnemanuel.com
                             QUINN EMANUEL URQUHART &
11                              SULLIVAN, LLP
                             51 MADISON AVENUE, FLOOR 22
12                              NEW YORK, NY 10010
                             Telephone: (212) 849-7000
                             Facsimile: (212) 849-7100

13

14                               *Attorneys for Petitioner*
                              *Shervin Pishevar*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*EX PARTE* APPLICATION AND MEMORANDUM OF POINTS AND AUTHORITIES